# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

## Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| **NOVEMBER 2025** | **00054** |
| E-Filing Number: 2510074139 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| LINDA A. JACOBS | OSCAR B. JONES |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1524 LOCUST STREET<br>PHILADELPHIA PA 19102 | 112 LINDEN STREET<br>HENDERSON NV 89015 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | ☒ Complaint ☐ Petition Action ☐ Notice of Appeal<br>☐ Writ of Summons ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

CASE TYPE AND CODE

2L - LIBEL, SLANDER, MISREPRESENT

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED**<br>**PRO PROTHY**<br><br>OCT **31** 2025<br><br>S. GILLIAM | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES      NO |
|---|---|---|

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: LINDA A JACOBS

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>KEAN C. MAYNARD | ADDRESS<br>1524 LOCUST STREET<br>PHILADELPHIA PA 19102 |
|---|---|
| **PHONE NUMBER**<br>(215)735-3900 | **FAX NUMBER**<br>none entered | |
| SUPREME COURT IDENTIFICATION NO.<br>327794 | E-MAIL ADDRESS<br>kmaynard@bochettoandlentz.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>*KEAN MAYNARD* | DATE SUBMITTED<br>Friday, October 31, 2025, 01:56 pm |

**BOCHETTO & LENTZ, P.C.**
By: Kean C. Maynard, Esquire
I.D. No. 327794
1524 Locust Street
Philadelphia, PA 19102
T: (215)735-3900
F: (215)735-2455
kmaynard@bochettoandlentz.com



*Attorney for Plaintiffs*

| | |
|---|---|
| **LINDA A. JACOBS** ) | COURT OF COMMON PLEAS |
| c/o Bochetto and Lentz, P.C. ) | PHILADELPHIA COUNTY |
| 1524 Locust Street, ) | |
| Philadelphia, PA 19102 ) | CIVIL ACTION - LAW |
| *Plaintiff,* ) | |
| v. ) | |
| ) | OCTOBER TERM, 2025 |
| **OSCAR B. JONES** ) | |
| 112 LINDEN STREET, HENDERSON, ) | NO. |
| NV 89015-6109 ) | |
| ) | **JURY TRIAL DEMANDED** |
| *Defendant.* ) | |
| ) | |

## NOTICE TO DEFEND

<table>
<tr><td align="center"><b>NOTICE</b></td><td align="center"><b>AVISO</b></td></tr>
<tr><td>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

</td><td>

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

</td></tr>
<tr><td>

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association Lawyer Referral and Information Service One Reading Center Philadelphia, Pennsylvania 19107 (215) 238-6333 TTY (215) 451-6197**

</td><td>

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asociacion De Licenciados De Filadelfia Servicio De Referencia E Informacion Legal One Reading Center Filadelfia, Pennsylvania 19107 (215) 238-6333 TTY (215) 451-6197**

</td></tr>
</table>

**BOCHETTO & LENTZ, P.C.**
By: Kean C. Maynard, Esquire
I.D. No. 327794
1524 Locust Street
Philadelphia, PA 19102
T: (215)735-3900
F: (215)735-2455
kmaynard@bochettoandlentz.com

|  |  |
|---|---|
|  | *Attorney for Plaintiffs* |
| **LINDA A. JACOBS** ) | COURT OF COMMON PLEAS |
| c/o Bochetto and Lentz, P.C. ) | PHILADELPHIA COUNTY |
| 1524 Locust Street, ) |  |
| Philadelphia, PA 19102 ) | CIVIL ACTION - LAW |
| *Plaintiff,* ) |  |
| v. ) |  |
| ) | OCTOBER TERM, 2025 |
| **OSCAR B. JONES** ) |  |
| 112 LINDEN STREET, HENDERSON, ) | NO. |
| NV 89015-6109 ) |  |
| ) | **JURY TRIAL DEMANDED** |
| *Defendant.* ) |  |
| ) |  |

## COMPLAINT – CIVIL ACTION

Plaintiff Linda A. Jacobs ("Plaintiff" or "Jacobs") by and through undersigned counsel,

Kean C. Maynard, Esquire of Bochetto & Lentz, P.C., submits this Complaint against Defendant

Oscar B. Jones ("Jones"), and alleges upon personal knowledge and upon information and belief as

follows:

### INTRODUCTION

1.    This matter arises from Defendant Jones engaging in a sustained and malicious

campaign of extortion and defamation, publishing repeated false accusations against Plaintiff with

the intent to intimidate, humiliate, and destroy her reputation

2.    Plaintiff is a seventy-four-year-old clinician and cancer researcher who has spent a

distinguished 40+ year career caring for patients at the University of Pennsylvania Cancer Center.

3.    Jones has never met or spoken with Plaintiff, yet for more than a year he has

relentlessly harassed her through unsolicited, threatening emails and online posts, each falsely

accusing Dr. Jacobs of despicable crimes intended to intimidate and inflict emotional distress.

4.      Jones' lies and threats were not random; they were the latest act in a three-year scheme of harassment and extortion, aimed at pressuring Plaintiff's son, Steven Jacobs, to pay money to Jones and his wife, Trianna Begum.

5.      In furtherance of this scheme of harassment, Jones obtained the email address of Plaintiff and in August of 2024, began sending Dr. Jacobs threatening emails as a means to harass and intimidate the Jacobs family.

6.      Jones' emails to Dr. Jacobs ranged from threatening to bizarre, including demanding money, threatening to file frivolous lawsuits, implying that Jones would send Steven Jacobs to prison, and sending Dr. Jacobs unsolicited explicit photos of Jones' wife.

7.      The emails from Jones continued into 2025, and each email went unanswered by Dr. Jacobs.

8.      Failing his desire to get a reaction from Dr. Jacobs through his harassing emails, Jones then turned to social media to publicly bash Dr. Jacobs and spread false and defamatory accusations about her, while dragging her reputation and that of her employer, Penn Medicine.

9.      On August 22, 2025, Plaintiff's seventy-fourth birthday, Jones began his defamatory social media campaign against Plaintiff as he began publishing a knowingly false accusation claiming that Plaintiff committed the crime of "money laundering" in a conspiracy to hide money from Jones. This false accusation was manufactured as yet another scheme to apply undue pressure onto the Jacobs family to pay Jones money.

10.     As Jones' campaign continued, he continued to escalate the false accusations by insinuating that he is in possession of unimpeachable evidence that Plaintiff committed the crime of money laundering.

11.     After months of this online defamation and harassment, Dr. Jacobs finally

2

responded by issuing a cease-and-desist letter to Jones. Instead of complying with the lawful demands therein, Jones has again decided to double-down on his accusations that he has evidence supporting his false accusations against Dr. Jacobs.

12.    Of course, no such evidence exists, because no such crime was committed.

13.    Accordingly, Plaintiff is compelled to file this civil action to seek relief against Jones, whose conduct has been extraordinarily malicious.

14.    Indeed, Jones has been repeatedly advised that his publications are absolutely false, and that his campaign of defamation must end. Yes Jones has continued to make false and defamatory social media posts about Plaintiff, including through at least October 3, 2025.

15.    Therefore Plaintiff is entitled to significant special damages and punitive damages against Jones for his multitude of defamatory lies, as set forth below.

## THE PARTIES AND JURISDICTION

16.    Plaintiff is a resident of Pennsylvania, residing in Montgomery County and until recently was employed by the University of Pennsylvania, located in Philadelphia County.

17.    Defendant Oscar Jones' last known address is 112 Linden Street, Henderson, NV 89015-6109. Thorough investigation has been completed to identify a current known address, however upon information and belief, Mr. Jones is actively concealing his current whereabouts to avoid service.

18.    As set forth more fully below, personal jurisdiction over Jones is proper in Pennsylvania. Jones expressly aimed false, defamatory, and malicious statements at Plaintiff knowing Plaintiff resides and was employed in Pennsylvania, with the intent and effect of causing reputational and economic harm in this State.

19.    Jones has also publicly posted Plaintiff's photo and identified her repeatedly as being employed by Penn Medicine (in Philadelphia, Pennsylvania), with the express aim of

Case ID: 25110005

harassing and intimidating Plaintiff in Pennsylvania.

20.     All of Jones' X statements were disseminated in Pennsylvania and aimed at Plaintiff, who resides in Pennsylvania.

21.     Jones has known at all relevant times that Plaintiff lives and worked in Pennsylvania.

22.     This Court has jurisdiction over the subject matter and parties to this action. As more fully set forth in this Complaint, Defendant posted false and defamatory statements on social media about Plaintiff, provided below.

23.     This Court has personal jurisdiction over the Defendant pursuant to 42 Pa. Cons. Stat. § 5322, as Defendant posted false and defamatory statements on social media about Plaintiff aimed at causing harm and tortious injury to Plaintiff who resides in this Commonwealth

24.     Venue is proper in Philadelphia County pursuant to Pa.R.C.P. §§1006(a)(1), and 2156(a), as the defamatory statements were published, read, and understood in Philadelphia County and by multiple residents of Philadelphia County and specifically targeted at Plaintiff's place of employment, Penn Medicine, which is located in Philadelphia County. As detailed herein, the statements giving rise to this action have caused harm to Dr. Jacobs on a national scale, including in Philadelphia County, where she maintains a reputation as Penn Medicine's former Program Director.

## FACTUAL BACKGROUND

### A. Background of Jones' Harassment

25.     Jones first contacted Plaintiff on August 15, 2024 through an unsolicited email, having found her University of Pennsylvania email address online.

26.     In his August 15, 2024 email, Jones sent Plaintiff a brief that he had filed in his litigation against Steven, and stated that Steven was "acting really crazy" and it would "likely lead

4

to [Steven] losing his law license and perhaps even time in prison."

27.     Jones acknowledged Plaintiff had no connection to his controversy with Steven by saying "I am not expecting anything from you [i.e. Plaintiff] per se," but nevertheless the tone and tenor of the correspondence made Plaintiff believe that Jones was trying to extort money from her to stop his attacks against her son. The August 15, 2024, email is attached as Exhibit A.

28.     The August 15 email was clearly intended to threaten and intimidate Dr. Jacobs as an undue means further harass her son, Steven Jacobs.

29.     Dr. Jacobs did not respond to the August 15 email.

30.     Not achieving his desired goal of a reaction, Jones then sent several more unanswered emails throughout August 2024, similarly intended to threaten, harass, and intimidate Plaintiff.

31.     On January 8, 2025 things took an even more disturbing turn. On that day Jones sent Plaintiff a picture of himself shirtless, along with his wife exposing herself and breastfeeding their newborn baby. After falsely accusing Steven of a host of crimes, Jones closed the email by saying "[l]et me know if you have any comment on the matter please."

32.     Still receiving no response or reaction from Dr. Jacobs, on February 17, 2025, Jones sent Plaintiff an email titled "NOTICE OF IMMINENT LAWSUIT: Jones vs Linda and Steven Jacobs. This email continued to spew knowingly false allegations against Steven.

33.     However, tellingly, after months of failed attempts to solicit a reaction from Dr. Jacobs in his previous bizarre and threatening emails, Jones invented a new scheme to provoke Dr. Jacobs.

34.     In the February 17 email, Jones, first the first time, accused Plaintiff of money laundering and threatened to sue her in Pennsylvania. The February 17 email is attached as Exhibit B.

35.     The accusations of money laundering were unsupported by any evidence of this alleged crime and were clearly just the latest in Jones' attempt to intimidate, harass, and threaten Dr. Jacobs.

36.     Jones never filed the threatened lawsuit against Plaintiff.

### B. Jones' Defamatory Social Media Posts

37.     Clearly unsatisfied with his failure to provoke Dr. Jacobs through his email harassment, Jones escalated his defamatory campaign by taking it public – with the malicious intent to destroy Dr. Jacobs' hard-earned career with Penn Medicine, while accusing her of heinous crimes she did not commit.

38.     As described below, through his many defamatory social media posts, Jones developed a false narrative essentially accusing Dr. Jacobs of conspiring with her son, Steven, to launder money as a means to hide it from Jones.

39.     Of course, the many defamatory posts pushing this narrative are knowingly false, and intended only to intimidate Dr. Jacobs into paying Jones money he is not owed.

40.     On August 22, 2024, Jones posted "Scammin' Steve Jacobs is trying to get @AZStateBar to hand him a law license in AZ while concealing damaging facts; perhaps [apple] doesn't fall far from [tree]. Evidence points to Money-Laundering' Linda Jacobs (Program Director @PennMedicine) aiding her son in illegally concealing [source] of $."

41.     As detailed herein and within the many defamatory posts, Jones made sure to tag Dr. Jacobs' employer, Penn Medicine, to amplify exposure of the defamatory posts and destroy her reputation within the medical community.

42.     The same day, Jones posted "[a]t least 3 separate pieces of concrete evidence point to Linda Jacobs, mother of Steven and Program Director at @PennMedicine, illegally conspiring with her son Scammin' Steve, to conceal the true source of funds in a 6-figure transaction. AKA money laundering." This post included pictures of Plaintiff (from her public LinkedIn account),

as well as Steven.

43.    Jones posted Plaintiff's LinkedIn account and picture again the same day, accompanied by another post saying "[m]eet Linda Jacobs, Director at Ivy League University of Pennsylvania (cc: @upenn @PennMedicine) . . . Linda is likely complicit in a 6 figure money laundering scheme to aid & abet her sons' 6 figure felony theft."[1]  Oscar reposted this post for a second time the same day.  As of the date of this filing it has been viewed nearly 3,000 times.

44.    In response to this post, one of Jones' followers asked "do you actually have evidence she was involved"?  In response, Jones posted "I wouldn't be tweeting about it and pointlessly exposing myself to a defamation suit if I didn't have the goods." This is one of many times that Jones has falsely claimed to have "evidence" that definitively proves his statements are true.  Of course he does not have any such evidence because his claims are false.

45.    On August 23, 2025, Jones posted "Steven Jacobs: half-million $ felony theft. @PennMedicine's Linda Jacobs: conspiracy to launder the stolen money . . . Future @nypost headline? . . . 'Ivy Scandal Deepens: Penn Med Mother Used as Secret Bank in Lawyer Sons $500k Gambling Fraud Scheme!" . . . A man can dream."

46.    Jones intentional tagging of both Penn Medicine and the New York Post social media accounts is evidence of his malicious intentions to escalate his campaign of defamation and harassment and maximize exposure and harm to Dr. Jacobs.

47.    On August 24, Jones posted "LOL if I ever make one FALSE statement about Stealin' Scammin' Steven Jacobs or his Money-Laundering' Mother Linda Jacobs (x2 Ivy Leaguers), I would get sued 7 ways from Sunday. Their silence says it all; if they sue, I will win, and they know it."

---

[1] Notably, Steven has committed no "felony theft" or theft of any kind.  Like Plaintiff, Steven has never been charged with, let alone convicted of, any crime at all.

Case ID: 25110005

48.     On August 25, 2025, Jones posted "Lets get this straight: I am not dragging @PennMedicine's Linda Jacobs into a situation where she doesn't belong. She dragged herself into it when she accepted stolen $ from Steven, then used that $ to pay Steven's previous judgment creditor and claim 'gift' AKA Money Laundering."

49.     On September 4, 2025, Jones posted that ". . . Linda Jaocbs, director of medicine at @PennMedicine helped [Steven] launder stolen money to pay a former creditor. @AZStateBar is investigating the matter, what about PennMed?"

50.     On September 10, 2025, Jones posted about previous litigation Steven had against a non-party, and stated "Steven's mom, Linda Jacobs of @PennMedicine paid the judgment w $ that Steve stole [from] me and sent to her . . .."

51.     Shortly thereafter, on September 12, 2025, Dr. Jacobs, through counsel, delivered a cease-and-desist letter to Jones advising him that his claims were absolutely false, and demonstrating his own admissions to the falsity of his claims. The letter demanded that Jones remove all defamatory publications and immediately cease and desist from all defamation and harassment of Plaintiff.

52.     On September 30, 2025, Jones responded by again doubling down on his baseless accusations, complete with a rambling letter further illustrating his manufactured theory that Plaintiff committed the crime of money laundering. In that correspondence Jones stated that after he "received new information that gave [him] the certainty that [he] needed to shield [him] from defamation on grounds of absolute truth."

53.     Jones was provided with the opportunity to share his new information that allegedly supported his false accusations to Dr. Jacobs. Jones refused to do so. That is, of course, because no such evidence exists.

54.     Meanwhile, Jones continued his defamatory social media campaign.

55.     On October 2, 2025, Jones posted "Linda Jacobs sent $270k to her son Steven's ex-creditor to settle a seven-year-and-still-hot legal feud . . . As of September 2025 . . . Linda for the first time denies that she was a party to the money laundering transaction charged below."

56.     On October 3, 2025, Jones posted "Nobody denies that Linda paid [Steven's former creditor] $270k in March 2023, but Linda denies that Steven paid her $ as charted below.  Linda wants you to believe that she just happened to pick March 2023 . . . as a good time to spontaneously gift her son $270k to make his 7-year-and-still-hotly-litigated legal problem disappear.  'Robbing Peter to pay Paul.'"  This post included yet another pictograph created by Jones.

57.     As of the date of this filing, all of the cited social media posts can be found on Jones' public X page at https://x.com/oscarjonesslc1.  Screenshots of the relevant posts are also attached as Exhibit C.

58.     For the avoidance of doubt, there is not a shred of truth to Jones' theory that Plaintiff committed money laundering by somehow using his funds to pay a judgment creditor of her son Steven.

59.     Plaintiff never met with or spoke with Jones.

60.     Until he began harassing her in August of 2024, Plaintiff did not know Jones existed.

61.     Plaintiff did not receive any money from her son at all to pay his former creditor.

62.     Plaintiff did not commit money laundering in 2023 as Jones claims, or at any other time.

63.     As Jones knows, Plaintiff has never been convicted of money laundering or any other crime.

64.     As Jones knows, Plaintiff has never been charged with money laundering or any other crime.

65.    To the best of Plaintiff's knowledge, no one in her seventy-four years has ever accused her of committing any crime (prior to Jones).

66.    Despite notice and actual knowledge of the falsity of their claims, Jones continues to imply that he has evidence confirming the truth of his multitude of defamatory posts and he continues to refuse to retract, apologize or take any affirmative steps to set the record straight.

67.    As a result, Plaintiff's reputation continues to be harmed

### Count I – Defamation

68.    Plaintiff repeats the allegations contained in the preceding paragraphs as though set forth in full herein.

69.    The defamatory statements, alone or in combination, have defamatory character and are per se defamatory for the following reasons, among others:

    a) they ascribe to Plaintiff conduct, character, or a condition that adversely reflects upon, and have and will adversely reflect upon, her fitness and/or perceived fitness to be in any position of trust including in her community of peers at Penn Medicine and the greater medical community;

    b) they ascribe to Plaintiff acts and failures to act that are improper and unlawful and impugn her integrity and blacken her personal and professional reputation;

    c) they expose Plaintiff to hatred, contempt, or ridicule, and injure her in her community and her profession; and

    d) they lower Plaintiff in the estimation of the recipients of the statements and deter third persons from associating with and/or engaging with her or employing her in any capacity.

70.    Any and all persons who have read or heard, or will read or hear the above defamatory statements understood, and will understand, the same as having a defamatory meaning.

71.    Any and all persons who have learned, or will learn, about the above defamatory

statements from another, understood, and will understand, the same as having defamatory meaning.

72.     Any and all persons who have read or heard or will read or hear the above defamatory statements will understand that the same applies to Plaintiff.

73.     The above defamatory statements are false.

74.     Defendant knew, when he published the above defamatory statements that they were false or at a minimum unreliable and wholly unsupported.

75.     Any and all persons who have learned, or will learn, about the above defamatory statements from another understood, and will understand, that the same applies to Plaintiff.

76.     Defendant delivered and published the defamatory statements negligently, with actual malice and/or a reckless disregard for the truth of the statements expressed therein.

77.     Jones' numerous statements accusing Plaintiff of money laundering and referring to her as "Money-Launderin' Linda Jacobs" are false, defamatory, and extremely damaging.

78.     Plaintiff did not commit money laundering.

79.     Plaintiff never received "stolen" money from Plaintiff or anyone else.

80.     Indeed, Plaintiff has never been arrested, charged with, or convicted of any crime whatsoever (as Jones knows)

81.     Jones acted with actual malice, knowing the statements were false or, at absolute minimum, recklessly disregarding the truth.

82.     Jones defamatory statements were disseminated in Pennsylvania, intended to cause harm in Pennsylvania, were viewed by people in Pennsylvania (including more than one of Plaintiff's colleagues), and have caused immense harm in Pennsylvania.

83.     Jones' false statements constitute defamation *per se* as they constitute an accusation that Pennsylvania committed a crime, and they constitute an attack on Pennsylvania in her

Case ID: 25110005

profession as a cancer clinician and researcher.

84.    Damages for defamation *per se* are presumed and include reputational harm and emotional damages.

85.    Plaintiff is also entitled special damages for the damages Jones has inflicted upon Plaintiff in an amount to be proven at trial.

86.    At all times relevant to this matter Plaintiff acted in a willful and wanton manner, with the intent to cause harm to Plaintiff, and with an evil mind so as to justify an award of punitive damages against Jones in an amount sufficient to punish Jones and to deter Jones and others from engaging in similar conduct in the future.

**WHEREFORE**, Plaintiff requests judgment in her favor against Defendant, jointly and severally, in an amount in excess of $50,000 sufficient to fully compensate her, together with punitive damages, interest, costs of suit, and such further relief deemed equitable and just..

### Count II – False Light

87.    Plaintiff repeats the allegations contained in the preceding paragraphs as though set forth in full herein.

88.    All of these defamatory statements were false and Defendant maliciously disregarded the falsity of such statements.

89.    Defendant made these statements with the intent of harming Plaintiff's reputation in the eyes of her peers and members of her community so that Dr. Jacobs would be deemed dishonest and regarded as a criminal.

90.    As a direct and proximate cause of said false statements, Dr. Jacobs' reputation has been damaged and her earning capacity has been greatly diminished.

91.    The statements were made with the intent that Dr. Jacobs' peers and community would receive it in particular.

Case ID: 25110005

92.     Defendant intentionally cast Dr. Jacobs in a false light by falsely and adamantly accusing her of criminal activity.

93.     Defendant's false statements described above casting Dr. Jacobs in a false light would be highly offensive to a reasonable person.

94.     As a direct and proximate result of Defendant's casting Dr. Jacobs in a false light, Dr. Jacobs has suffered severe and permanent damage as set forth above.

**WHEREFORE**, Plaintiff requests judgment in her favor against Defendant, jointly and severally, in an amount in excess of $50,000 sufficient to fully compensate her, together with punitive damages, interest, costs of suit, and such further relief deemed equitable and just..

## Count III – Intrusion Upon Seclusion

95.     Plaintiff repeats the allegations contained in the preceding paragraphs as though set forth in full herein.

96.     At all relevant times, Plaintiff maintained a reasonable expectation of privacy in her personal life, her professional communications, and her electronic correspondence.

97.     Defendant intentionally and repeatedly invaded Plaintiff's privacy by sending unsolicited, harassing, and disturbing emails, including one containing an image of himself shirtless and of his wife breastfeeding their newborn child, which were grossly inappropriate, unwanted, and highly offensive to any reasonable person.

98.     Defendant also persistently targeted Plaintiff with unwanted communications, despite receiving no response, and continued to direct those communications to her University of Pennsylvania work email address, where she reasonably expected to be free from personal harassment.

99.     Defendant's actions were not isolated but part of a pattern of deliberate intrusion intended to harass and intimidate Plaintiff, including threatening litigation, accusing her of criminal

Case ID: 25110005

acts, and attempting to coerce her through repeated electronic contact.

100.    Defendant's conduct was intentional, outrageous, and offensive, and it seriously intruded upon Plaintiff's solitude and private affairs.

101.    Defendant's intrusions would be highly offensive to a reasonable person and served no legitimate purpose.

102.    As a direct and proximate result of Defendant's intentional intrusion, Plaintiff has suffered severe emotional distress, embarrassment, humiliation, and anxiety, and continues to experience distress due to Defendant's ongoing harassment and invasion of her privacy.

103.    Defendant's conduct was malicious, willful, and in reckless disregard of Plaintiff's rights, justifying an award of punitive damages to deter such conduct in the future.

**WHEREFORE**, Plaintiff requests judgment in her favor against Defendant, jointly and severally, in an amount in excess of $50,000 sufficient to fully compensate her, together with punitive damages, interest, costs of suit, and such further relief deemed equitable and just..

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants as follows:

      a) Injunctive relief in the form of ordering Defendant to remove all defamatory publications regarding Plaintiff and forever be enjoined from further publishing the false and defamatory accusations outlined above;

      b) Awarding presumed damages as provided under Pennsylvania law for the reputational damages suffered to Plaintiff;

      c) Special damages in an amount to be proven at trial;

      d) Exemplary and punitive damages in an amount sufficient to punish Defendant

14

Oscar Jones for engaging in the conduct described herein and to deter Jones and others from engaging in similar conduct in the future, in an amount to be determined at trial;

e) Pre- and post-judgment interest;

f) Such other and further relief in Plaintiff's favor as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demand trial by jury in this action of all issues so triable.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

Date: October 31, 2025

By: /s/ Kean C. Maynard

Kean C. Maynard, Esquire
*Attorney for Plaintiff*

15

Case ID: 25110005

# EXHIBIT A

Case ID: 25110005

Case ID: 251100054

**From:** Oscar Jones <oscarjonesslc@gmail.com>
**Sent:** Thursday, August 15, 2024 4:16 PM
**To:** Jacobs, Linda
**Subject:** [External] Steven Jacobs
**Attachments:** 100318(Jones v. Jacob)AppBrief_0722024.pdf

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Looping you in with the appellate brief (see attached) which describes in detail the controversy with Steven Jacobs which led to him getting fired from HSF.

I am not expecting anything from you per se, but he is acting really crazy, continues to email me threats daily, has already gotten himself fired from his $500k/yr salaried job, and the way he is proceeding (litigiously), in my candid estimation, will likely lead to him losing his law license and perhaps even time in prison. These are both bad outcomes for me, I just want to get paid back the money he stole from me.

If you have any influence over him whatsoever and have any interest in brokering a settlement deal with him, please reach out.

Best

--Oscar Jones

# EXHIBIT B

Case ID: 25110005

**From:** Oscar Jones <oscarjonesslc@gmail.com>
**Sent:** Monday, February 17, 2025 9:23 PM
**To:** Jacobs, Linda
**Subject:** [External] NOTICE OF IMMINENT LAWSUIT: Jones vs Linda and Steven Jacobs

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Linda

It has come to my attention that the payment made to Bronson to settle *Bronson vs Jacobs* was made **by Linda Jacobs** on behalf of Steven Jacobs. The timing of that payment, which occured **only a matter of days** following a payment DraftKings made to Steven in relation to the venture between him and I, gives rise to a fair question by any reasonable mind, as to whether you conspired with your son Steven to launder money, with knowledge of its fraudulent origin.

**I write to you to invite you to submit a sworn affidavit** that speaks to precisely what you knew or didnt know about Steven's liability to me concerning our DraftKings venture, at the time you made payment to Bronson on Steven's behalf.

Depending on what you are or are not able to attest to in a sworn statement, or if you do not timely respond to this email, then I will provide you with the opportunity to submit such a statement in an open forum when I file a lawsuit in the state of Pennsylvania naming you as a Co-Defendant in Steven's self-admitted fraud scheme.

Best,

--

--Oscar Jones

# EXHIBIT C

Case ID: 25110005

gram Director @PennMed

on in illegally concealing s

/25 · **39** Views

  

# laundering.





University of P

y complicit in a 6 figure m

cheme to aid & abet her s

y theft

 **Join now**

la Jacobs



/25 · **635** Views

↻ 1          ♡          ⊓

**zbettor** ✔ @sprotzbettor · 3h
m sure steven is a scumbag b
ly have evidence she was inv

↻          ♡ 1          ılıı 3

**Jones** @oscarjoneslc1 · 3h
dn't be tweeting about it and

ost headline?

l Deepens: Penn Med Mot
k' in Lawyer Sons $500k (
me!"

lream

ar is investigating the matt

Med?

pacesNews @PokerSpacesN

public warning to the spaces

not to do business with snoo

generate gambler so buyers b

25 · **91** Views

  2

en ~$80k

t Linda $$

$$ to Stevens previous c

Linda: where is the $ I se

25 · **112** Views

  2 

make one FALSE stateme

mmin' Steven Jacobs or h

Mother Linda Jacobs (x2 I w

would get sued 7 ways fro

e says it all; if they sue, I w

ast @jtheace2 · 21h

**ast** @jtheace2 · 21h

rjonesslc1 u finally said one t
u are, in fact, up to no good.

aitin for you to respond to my
your many public comments

/25 · **77** Views

 

**Jones** @oscarjonesslc1 · 1h

editor and claim "gift"

Laundering

