**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LINDA A. JACOBS, Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| OSCAR B. JONES, Defendant. | : | No. 26-394 |

# ORDER

**AND NOW,** this 26th day of August, 2026, upon consideration of Non-Party Steven B. Jacobs's Motion to Quash Defendant's DraftKings Subpoena (ECF No. 43), Defendant Oscar B. Jones's response in opposition (ECF No. 45), Defendant's Cross-Motion to Compel Production of DraftKings's subpoena (ECF No. 46), Non-Party DraftKings Inc.'s response thereto (ECF No. 53), Defendant's Motion for Leave to Serve Subpoena on Steven B. Jacobs (ECF No. 47), Non-Party Steven B. Jacobs' response thereto (ECF No. 51), Non-Party Steven B. Jacobs's Letter Motion to Quash Defendant's Non-Party Subpoena of Kaufman & Kahn LLP (ECF No. 49), and Defendant's response thereto (ECF No. 52), it is hereby **ORDERED as follows:**

1. Non-Party Steven B. Jacobs's Motion to Quash Defendant's DraftKings Subpoena (ECF No. 43) is **DENIED**.[1] Mr. Jones will be permitted to proceed with his modified

[1] Non-party Steven B. Jacobs seeks to quash Defendant Oscar B. Jones's subpoena that seeks Mr. Jacobs's personal and financial information from Non-Party DraftKings, Inc. *See* ECF No. 43-1. The basis of Mr. Jacobs's motion is trifold: that the information sought is "irrelevant and disproportionate," that Mr. Jones has an "improper purpose" for asking for this information, and that Mr. Jones has violated his duty "to avoid an undue burden." *Id.* at 4–5. For these reasons, Mr. Jacobs submits that the subpoena should be quashed and Mr. Jones should be precluded from serving any more third-party subpoenas without permission from the Court. *Id.* at 5.

In response, Mr. Jones explained that much of Mr. Jacobs's argument is moot: the original subpoena has since been modified following guidance from the undersigned at an on-the-record discovery hearing. *See* ECF No. 45, at 7. Specifically, Mr. Jones has voluntarily narrowed the relevant timeframe (now only seeking records for the period of December 30, 2022, through March 15, 2023), and removed the request for linked funding sources, deposit

DraftKings subpoena with an amended return date of September 9, 2026. This decision is without prejudice to DraftKings raising any appropriate objections of its own.

2. However, Mr. Jacobs has shown that there is good cause for entering a protective order over that information.[2] Mr. Jones is strictly **PROHIBITED** from using the information or

---

details, individual gaming activity, and all communications between Mr. Jacobs and DraftKings. *Id.* at 6–7. For the remaining information sought, Mr. Jones insists that it is relevant and proportional to his truth defense—namely, it either contradicts or corroborates Mr. Jacobs's sworn statement that he "did not give or transfer to [Plaintiff] any portion of an alleged $200,000 DraftKings withdrawal." *Id.* at 8. Moreover, he submits that the records received from Plaintiff in discovery thus far are insufficient, that he is not asking for this information for improper reasons, and that Mr. Jacobs cannot raise an undue burden argument since he is not the producing party. *Id.* at 9–15.

After considering the parties' extensive briefing and exhibits on this issue, I find that Mr. Jones's modified subpoena seeks information that is relevant to the claims and defenses at issue in this case. As the parties are well aware, "relevance" in the discovery context is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Saller v. QVC*, No. 15-2279, 2016 WL 8716270, at *5 (E.D. Pa. June 24, 2016) (Sitarski, M.J.) (quoting *Green v. Cosby*, 314 F.R.D. 164, 171 (E.D. Pa. 2016)). But relevance, though broad, is not unlimited. *Id.* For instance, an "inquiry based on the party's mere suspicion or speculation" is beyond the bounds of relevance. *Id.*

Here, Mr. Jones has satisfied this low bar of demonstrating relevance. To overly simplify, the focus of this lawsuit is the source of funds used by Plaintiff to satisfy a judgment against her son, Mr. Jacobs. Mr. Jones alleges that Plaintiff and Mr. Jacobs conspired to take $200,000 from Mr. Jacobs's DraftKings account (and to which Mr. Jones claims he is entitled) in January 2023 to fund the judgment payment two months later in March 2023. Mr. Jones cites to alleged text messages from Mr. Jacobs that allegedly imply that he made a $200,000 withdrawal from his DraftKings account at this time to pay back Mr. Jones, and that he previously had the source of funds deposited into an account obscured by transferring them into intermediary accounts. *See* ECF No. 45, at 10–11. As such, I find that the limited withdrawal information during this narrowed timeframe is relevant to the issues in this case, and Mr. Jacobs's motion to quash is denied.

[2] Although I have denied Mr. Jacobs's motion to quash, I agree that he has shown good cause for a limited protective order over the information produced pursuant to the DraftKings subpoena. "In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). Good cause is shown by establishing that "disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). To make this determination, federal courts generally balance competing interests of "the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." *Id.* at 787 (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 HARV. L. REV. 427, 433–35 (1991)). After the court concludes that disclosure is warranted, it must then decide whether the information should only be disclosed "in a designated way." *Id.* This determination requires the court to balance "the harm to the party seeking protection (or third persons) and the importance of disclosure to the public." *Id.* "The most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed and the use to which these persons may put the information." *Id.* (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2043 (1970)). Among the factors that should be balanced are an individual's interest in privacy, whether the information is sought for an improper purpose, the prevention of embarrassment, whether a party is a public official, and whether the case involves issues important to the public. *Id.* at 787–88.

records obtained pursuant to the DraftKings subpoena for any purpose outside this case, including other litigation between him and Mr. Jacobs, and from publicly disseminating any of the information or records.

3. Defendant's Cross-Motion to Compel Production by Non-Party DraftKings Inc. (ECF No. 46) is **DENIED as moot**.

4. Defendant's Motion for Leave to Serve Subpoena on Steven B. Jacobs (ECF No. 47) is **DENIED without prejudice** to refile the motion should future circumstances warrant it.[3]

---

Balancing the relevant factors at play here, I find that a limited protective order is warranted. Notably, Mr. Jacobs has a privacy interest in his financial and gaming information, he is not a public official, the information is not being sought for an improper purpose (rather, it is sought for purposes of litigating and defending this case), and the issues in this case are not important to the public (to the contrary, they involve private matters amongst private individuals). In addition, Mr. Jacobs has articulated specific concerns about the public dissemination and unbridled use of this information: that Mr. Jones is seeking the information as an "end-run" around a stay entered in parallel litigation, as well as to harass Mr. Jacobs both on social media and in person. *See* ECF No. 43-1, at 4. For these reasons, Mr. Jones will be restricted in his use of the information acquired from DraftKings. Namely, he is barred from using it in other litigation or publicly disclosing it in any manner. The Court, however, declines to impose the more restrictive protections requested by Mr. Jacobs, such as the request for *in camera* review and a requirement that Mr. Jones seek permission from the Court before serving future subpoenas related to Mr. Jacobs's information. At this time, the *Pansy* factors do not weigh in favor of such restrictions.

[3] Defendant Oscar B. Jones has moved for leave to serve a subpoena on Non-Party Steven B. Jacobs by alternative means. *See* ECF No. 47. In support of his motion, Mr. Jones avers that he has twice attempted to personally serve Mr. Jacobs through a professional process server, but Mr. Jacobs refused both times, using a doorbell camera to communicate with the server. *Id.* at 2. Because of this, Mr. Jones now seeks permission to serve Mr. Jacobs by email, especially considering the fact that Mr. Jacobs suggested that he was amenable to email service on certain conditions that Mr. Jones submits that he satisfied. *Id.* at 3.

In response, Mr. Jacobs challenges the factual underpinning of the motion for alternative service. *See* ECF No. 51. Specifically, he insists that he has not evaded service, and Mr. Jones' allegations of same are not only unsupported but demonstrably false. *Id.* at 1. Absent any evidence of "a single proper attempt at service," Mr. Jacobs submits that Mr. Jones has not met his burden of establishing that alternative means of service is necessary. *Id.* at 1–2.

Having considered the parties' submissions, I find that Mr. Jones has not yet established compelling circumstances justifying alternative service of the subpoena. "A subpoena is properly served on a third-party when it is delivered to the named individual by a person who is at least 18 years old and not a party to the litigation in question." *Hamilton v. Radnor Twp.*, 662 F. Supp. 3d 536, 541 (E.D. Pa. 2023) (Lloret, M.J.) (citing to FED. R. CIV. P. 45(b)(1)). Although "[t]he Third Circuit has not interpreted the meaning of 'delivering' as used in the Rule," it has long been understood among district courts to mean "that personal service of subpoenas is required." *Crocker v. Nationwide Freight, Inc.*, No. 25-2307, 2025 WL 3218550, at *2 (E.D. Pa. Nov. 18, 2025) (Hey, M.J.) (quoting *Alfamodes Logis. Ltd. Liab. Co. v. Catalent Pharma Sols.*, Inc., No. 09-3543, 2011 WL 1542670, at *1 (E.D. Pa. Apr. 25, 2011); *see also* 9A Charles Alan Wright & Arthur Miller, FEDERAL PRAC. & PROC. § 2454 (same). Some courts in this circuit, however, have found that compelling circumstances may justify service by alternative methods, such as certified mail or email. *Doe v. Princeton Univ.*, 349 F.R.D. 92, 100 (D.N.J. 2025). For example, alternative service may be appropriate where an individual was "actively attempting to avoid service." *Id.* at 101.

5. Non-Party Steven B. Jacobs's request for monetary sanctions included in his response to Defendant's motion for leave to serve subpoena (ECF No. 51) is **DENIED.**

6. Non-Party Steven B. Jacobs's Letter Motion to Quash Defendant's Non-Party Subpoena of Kaufman & Kahn LLP (ECF No. 49) is **GRANTED** and Defendant Oscar B. Jones's subpoena directed to Kaufman & Kahn LLP is **QUASHED**.[4] Kaufman & Kahn LLP shall make no production in response to that subpoena.

BY THE COURT:

_s/Pamela A. Carlos_
PAMELA A. CARLOS
U.S. Magistrate Judge

---

With this in mind, I find that alternative service is not justified at this time. Though Mr. Jones has since submitted an affidavit supporting his factual averments, *see* ECF No. 52-1, at 12, he has only attempted to personally serve Mr. Jacobs, at most, twice (and one of those times was on a since-modified version of the subpoena), *see* ECF No.47, at 2. This is simply not enough. By contrast, other courts have permitted an alternative means of serving a subpoena only after significant attempts to personally serve the third party. *See, e.g.*, *Castillo v. Shippensburg Urban Developers, Inc.*, No. 19-2236, 2021 WL 12313250, at *1 (M.D. Pa. Nov. 24, 2021 (party attempted to personally serve individuals six times); *see also* 9A Charles Alan Wright & Arthur Miller, FEDERAL PRAC. & PROC. § 2454 ("[C]ourts that do permit alternative forms of service . . . typically require that the alternative service be authorized by a court prior to service, *that prior diligent attempts at personal service*, and that the alternative form is calculated to provide timely actual notice." (emphasis added)); *Myer v. Kuang*, No. 19-9385, 2021 WL 1100612, at *2 (D.N.J. Mar. 23, 2021) (denying motion, among other reasons, because "[t]here is no indication in the record that the process server made more than one attempt at service, attempted service at different times of the day, or attempted to serve [the individuals] at a different location, or while either were entering or leaving the premises"). Moreover, Mr. Jacobs has sworn that he has not evaded service of the subpoena and denied many of the facts supporting Mr. Jones' motion. *See* ECF No. 51. Without more, I find that the circumstances here do not yet compel alternative methods of service of the subpoena.

Nevertheless, despite this ruling, the undersigned *strongly* encourages Mr. Jones and Mr. Jacobs to resolve the service issue without further Court intervention now that Mr. Jacobs is aware of the subpoena and Mr. Jones understands his obligations under Rule 45. Should the circumstances change and demonstrate that Mr. Jacobs is actively avoiding service after multiple attempts, then I will consider a renewed motion for alternative service, if appropriate.

[4] Defendant Oscar B. Jones prepared a subpoena to be served on Kaufman & Kahn LLP ("Kaufman") seeking records related to the Plaintiff's payment to them to satisfy a judgment on behalf of her son, Steven B. Jacobs. *See* ECF No. 49, at 5–11. The source of monies that comprised of that payment is the crux of this lawsuit. Mr. Jones latches onto that fact to broadly seek all communications between Kaufman and Plaintiff and her son, payment information, the settlement agreement (and drafts thereof), payoff calculations, and satisfaction materials. *Id.* Mr. Jacobs objects to the issuance of this subpoena, arguing that is wholly irrelevant. *See* ECF No. 49. I agree, and Mr. Jones's arguments to the contrary are unconvincing. Specifically, the only argument Mr. Jones puts forth to establish relevance to his truth defense is that "*[i]f* the firm's file shows [Plaintiff] waiting on funds from Steven or

mentioning DraftKings," then it rebuts Plaintiff's denial of knowledge about Steven's DraftKings withdrawal. *See* ECF No. 52-1, at 1 (emphasis added); *see also id.* at 2. This is just too attenuated from the claims and defenses raised here to be considered relevant or proportional. *See, e.g.*, *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) ("[R]equested information is not relevant to 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation."); *Saller*, 2016 WL 8716270, at *5 (same).

Moreover, to the extent Mr. Jones suggests that the motion to quash is premature because the subpoena has not been served, *see* ECF No. 52-1, at 3, I disagree. The fact that the subpoena remains unserved is happenstance, as Mr. Jones attempted to serve it by email but Kaufman & Kahn LLP declined. *Id.* Not only that, but Mr. Jones has affirmatively indicated that he is "hold[ing] further attempts at service until this motion has been resolved." *Id.* at 2. Therefore, denying the motion to quash on this ground just for defendant to turn around and serve the subpoena and cause Mr. Jacobs to re-file the exact same motion to quash would not be prudent.